Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7885 | **DATE** | 7/12/2000 |
| **CASE TITLE** | Does et al vs. Franco Productions et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 9/13/2000 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Defendants Greenspan, Herman and Strand's motion (Doc 51-1) to dismiss for failure to state a claim on the ground that Defendants are entitled to qualified immunity is granted. All other pending motions are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | JUL 13 2000 |
| | Notified counsel by telephone. | date docketed |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| SCT | courtroom deputy's initials | date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 60

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN DOES 1 through 30 inclusive, and and Unknown Illinois State University Football Players,<br><br>Plaintiffs,<br><br>vs.<br><br>FRANCO PRODUCTIONS, et al.,<br><br>Defendants. | 99 C 7885 |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Before this Court is the Motion of Defendants Rick Greenspan, Linda Herman, and David Strand ("Defendants") to Dismiss Count X of the Third Amended Complaint filed by Plaintiffs John Does 1 through 30, et al. ("Plaintiffs"). Defendants are, respectively, Athletic Director, Assistant Athletic Director and President of Illinois State University ("ISU"). For the reasons set forth below, we grant the Defendants' motion.

### BACKGROUND

The following facts have been taken from Plaintiff's complaint, the allegations of which must be assumed as true for purposes of this motion. See



Bontkowski v. First National Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). Plaintiffs were intercollegiate athletes who, without their knowledge or consent, were videotaped in various states of undress by hidden cameras and microphones in the restrooms, locker rooms, and showers. The resulting product was sold on various videotapes and advertised and distributed via the Internet. At no time did any of the plaintiffs authorize the use of their images; in fact, they did not learn of the existence of the videotapes or that they were available for purchase until April 1999 when the athletes discovered a newspaper article detailing the operation. Plaintiffs in Count X of their complaint allege that Defendants became aware of the existence of said media in 1996 but did not inform the athletes. Plaintiffs further allege that Defendants did not disclose the existence of the videotapes, at least partially, because at least one Plaintiff had previously participated in a lawsuit against ISU. Plaintiffs claim as a result of the failure of Defendants to notify Plaintiffs, Plaintiffs' constitutional rights were violated. As a result of these alleged transgressions, Plaintiffs claim they, "suffered injury in the form of emotional distress, fear and anxiety which affected their abilities to attend to their daily functions, and which assumed physical manifestations, and otherwise injured Plaintiffs to their detriments [sic]." Plaintiffs allege that Defendants were acting pursuant to and under authority of the color of law in their official capacity as

agents of ISU. The allegations against these three individuals are brought in their individual capacity. Defendants now move to dismiss the claims against them on the theory that Plaintiffs have failed to state a claim upon which relief can be granted.

## LEGAL STANDARD

The purpose of the Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is to test the sufficiency of the complaint and not to decide the merits of the case. In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff, and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. See Bontkowski v. First National Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Sherwin Manor Nursing Center, Inc. v. McAuliffe, 37 F.3d 1216, 1219 (7th Cir. 1994). In order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. See Lucien v. Preiner, 967 F.2d 1166, 1168 (7th Cir. 1992). It is with these principles in mind that we address the motion before us.

## ARGUMENT

Defendants wish to dismiss the claim against them on the ground that as employees of ISU, a public state institution, they are entitled to qualified immunity. We agree. Civil rights actions against state officials in their individual capacities are permitted under section 1 of the Civil Rights Act of 1871, 42 U.S.C. §1983 ("§1983"), the tort remedy for deprivations of rights secured by federal law by persons acting under color of state law. Section1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. §1983.

Defendants are such state officials covered by the statute. See, e.g., Propst v. Bitzer, 39 F.3d 148 (7th Cir. 1994). However, the Supreme Court has held that Congress did not intend §1983 to abrogate the common law immunities traditionally accorded government officials, and that public officials are entitled to a certain degree of immunity, known as qualified immunity. See Pierson v. Ray, 386 U.S. 547 (1967). There is therefore a remedy to individuals injured by government officials' overreaching while at the same time protection for the ability of the officials to make decisions in the public interest and without disproportionate fear of the consequences. Were the law otherwise, public service to all citizens

would suffer. See Butz v. Economou, 438 U.S. 478, 504-507 (1978); Stephen Balcerzak, "Qualified Immunity for Government Officials: The Problem of Unconstitutional Purpose in Civil Rights Litigation," YALE LAW JOURNAL, vol. 95, no. 126 (1985).

In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the Supreme Court held that an official is "shielded from liability for civil damages insofar as [his/her] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". Id. at 818. Harlow thus announced an objective standard for determining whether a government official is entitled to qualified immunity. Id. at 816-819. The 7th Circuit has outlined a two-step approach in analyzing a defendant's qualified immunity defense: "(1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question?" See Kernats v. O'Sullivan, 35 F.3d 1171, 1176 (7th Cir. 1994) (citing Siegert v. Gilley, 500 U.S. 226, 231-232 (1991)). A negative answer to either prong of this test will decide the matter. See Montville v. Lewis, 87 F.3d 900, 902 (7th Cir. 1996).

Once the defendant raises the qualified immunity defense, the plaintiff bears the burden of establishing the existence of the allegedly clearly established constitutional right. See Rakovich v. Wade, 850 F.3d 1180, 1209 (7th Cir. 1988). While the plaintiff need not demonstrate that the exact situation being considered

was previously held unlawful, "[c]losely analogous cases, those decided before the defendants acted or failed to act, are required to find that a constitutional right is clearly established" unless the violation is obvious. Id.; see Kernats v. O'Sullivan, 35 F.3d 1171, 1176 (7th Cir. 1994) (stating "[I]ndeed, one need not cite a case at all if the constitutional violation is obvious"). Further, in order not to require too much hesitation from our public officials, this Circuit has recognized that the "test for immunity should be whether the law was clear in relation to the *specific facts* confronting the public official when he acted." See Colaizzi v. Walker, 812 F.2d 304, 308 (7th Cir. 1987) (emphasis added). As such, a "clearly established" right must be sufficiently clear so that a reasonable officer would understand that he is violating that right. See Anderson v. Creighton, 483 U.S. 635, 640 (1987).

It is beyond doubt that Defendants' conduct, as alleged by Plaintiffs, does not constitute a constitutional violation. Without attendant duty to prevent the sale and distribution of the materials exposing Plaintiffs, Defendants cannot be held responsible solely on the basis of knowing of the existence of such media. See Jackson v. City of Joliet, 715 F.2d 1200 (7th Cir. 1983) (holding that plaintiffs have no affirmative constitutional right to competent rescue services); Hilton v. City of Wheeling, 209 F.3d 1005 (7th Cir. 2000) (holding the plaintiffs have no affirmative constitutional right to police assistance). Plaintiffs generally allege Defendants violated their constitutional rights to free speech, privacy, and access to the courts.

Although these rights are indeed constitutional, it is unclear, and Plaintiffs fail to allege, how Defendants' conduct did actually violate those rights.

Plaintiffs first assert that Defendants violated Plaintiffs right to free speech by retaliating against Plaintiffs for an unrelated lawsuit previously filed by Plaintiffs against Defendants. We disagree. Although a first amendment cause of action is well recognized in response to retaliatory action by the administration of a university, see, e.g., Papish v. Board of Curators of the Univ. of Missouri, 410 U.S. 667 (1973), Plaintiffs fail to allege any *affirmative* acts by Defendants to retaliate against Plaintiffs for the filing of the lawsuit. See Qvyjt v. Lin, 953 F. Supp. 244, 248 (N.D.Ill. 1997) (holding that it is a clearly established that a university may not act to "punish" a student for the content of his speech). Moreover, Defendants point out that only one member of the Plaintiffs class was involved in the filing of the prior lawsuit. Given that Defendants acted indiscriminately with regard to the entire class in the present case, any support for a first amendment cause of action on the basis of retaliatory action by Defendants simply vanishes.

Plaintiffs secondly allege that Defendants violated their right of privacy by failing to alert Plaintiffs about the availability of the media exposing Plaintiffs. We disagree. Again, while the constitutional right to privacy is well recognized, see, e.g., Whalen v. Roe, 429 U.S. 589 (1977), knowledge alone of disclosure of personal matters by non-public private parties is not actionable under §1983.

-7-

Plaintiffs provide no adequate support for their contention that Defendants should be liable. Plaintiffs cite <u>Slayton v. Willingham</u>, 726 F.2d 631 (10th Cir. 1984) and <u>York v. Story</u>, 324 F.2d 450 (9th Cir. 1963) for the proposition that, "the right to prevent disclosure of photographs or videotapes of one's nude body is a clearly established part of the right to privacy." Be that as it may, these cases are inapposite. <u>Slayton</u> involved plaintiff asserting a claim against the police chief for displaying nude photos of the plaintiff to plaintiff's acquaintances. <u>York</u> involved police officers photographing and distributing indecent pictures of plaintiff, who had contacted police to report an assault. Plaintiffs also rely heavily on <u>James v. City of Douglas</u>, 941 F.2d 1539 (11th Cir. 1991), where the court concluded that the plaintiff had asserted a sufficient violation of her constitutional rights when police officers improperly handled a videotape of plaintiff engaged in sexual activity such that the videotape was viewed by and distributed to a large number of individuals. Finally, Plaintiffs put forth <u>Doe v. Knox County Bd. of Educ.</u>, 918 F. Supp. 181 (E.D.Ky. 1996) in which the court found the defendants liable for disclosing intimate personal details of a student during a hearing on the student's educational plan. In each of these cases cited by Plaintiffs in alleging Defendants' liability for violating Plaintiffs' right to privacy, the defendants have had an active role in intruding on the plaintiffs' constitutional rights and public officials themselves violated the plaintiffs' constitutional rights. The present case involves a situation

where Defendants themselves are alleged to have done nothing to intrude on Plaintiffs' right to privacy. Inaction by public officials, without more, is insufficient to generate liability. See, e.g., Jackson v. City of Joliet, 715 F.2d 1200 (1983). In the absence of an affirmative duty to disclose, Plaintiffs have not alleged how Defendants violated Plaintiffs' right to privacy by failing to disclose the existence of media displaying Plaintiffs in various states of undress.

Finally, Plaintiffs claim Defendants violated their right of access to the courts by concealing the existence of the media exposing Plaintiffs. Plaintiffs claim that Defendants concealed the existence of the media in order to prevent Plaintiffs from asserting a claim against Defendants for neglecting to provide a locker room free from unauthorized videotaping by failing to properly lock the locker room doors. Though the constitutional right of access to the courts is clearly established, see, e.g., Chambers v. Baltimore & Ohio R.R. Co., 207 U.S. 142 (1907), Plaintiffs cite to cases which address active efforts by public officials to conceal information from plaintiffs, preventing the plaintiffs from pursuing a cause of action. These cases are unlike the instant case.

Delew v. Wagner, 143 F.3d 1219 (9th Cir. 1998) involved a situation where those suing through the plaintiff alleged a conspiracy among police officers, one of whom was a relative of the defendant, to cover up deliberate failures to fully investigate plaintiff's death. In Gonsalves v. City of New Bedford, 939 F. Supp.

921 (D. Mass. 1996), the court found sufficient evidence to sustain a jury verdict of an intentional cover up of constitutional violations in a police beating of the deceased when the jury could not identify who was responsible for the constitutional violations. Bell v. City of Milwaukee, 746 F.2d 1205 (7th Cir. 1984) involved a conspiracy by police officers to prevent information from reaching the family of the deceased regarding an allegedly racially motivated shooting by a police officer. The plaintiffs in Ryland v. Shapiro, 708 F.2d 967 (5th Cir. 1983) alleged that police officers actively concealed and prevented a full investigation of the murder of the plaintiffs' daughter by a local prosecutor. In the case at bar, Plaintiffs allege that Defendants' concealment consists of failing to inform; it cannot be otherwise, for the offending media were already in the public domain and could not be concealed. There is a difference between failing to do something versus active concealment. See Flores v. Satz, 137 F.3d 1275 (11th Cir. 1998); see also Slagel v. Shell Oil Refinery, 811 F. Supp. 378, 382 (N.D.Ill.1993), aff'd 23 F.3d 410 (1994) (police officer has no federal constitutional mandate to conduct investigation into plaintiff's assault charge). For example, the defendants in Flores v. Satz, 137 F.3d 1275 (11th Cir. 1998) were not liable when the plaintiff alleged the defendants violated plaintiff's constitutional rights by failing to investigate properly

and expeditiously. By analogy, Defendants in the present case cannot be held liable for failing to do something they did not have an obligation to do. Thus, Plaintiffs have failed to allege the violation of a clearly established constitutional right.

Given that we find that Plaintiffs have not alleged a violation of a clearly established constitutional right, the second prong of the 7th Circuit's qualified immunity analysis is irrelevant. Where a right is not clearly established, it is futile to inquire into whether Defendants were aware of the nonexistent, or at best marginal, right. Plaintiffs have not carried their burden of demonstrating that Defendants are not entitled to qualified immunity. As such, we grant Defendants' motion to dismiss.

## CONCLUSION

For the reasons stated above, this Court grants Defendants' motion to dismiss for failure to state a claim on the ground that Defendants are entitled to qualified immunity.

_____
Charles P. Kocoras
United States District Judge

Dated: July 12, 2000